Filed 7/28/26  Leonetti v. Patel CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARK LEONETTI et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>VATSAL B. PATEL,<br><br>    Defendant and Respondent. | F089403<br><br>(Super. Ct. No. CV-23-005729)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  John R. Mayne, Judge.

Law Offices of Brown & Gessell, Steven L. Brown and Douglas A. Gessell for Plaintiffs and Appellants.

Salinas Law Group, Richard S. Salinas and Nicholas J. Penner for Defendant and Respondent.

-ooOoo-

Plaintiffs and appellants Mark Leonetti (Leonetti) and Piret Leonetti (collectively, plaintiffs) appeal from a judgment entered in favor of defendant Vatsal Patel, M.D. (Dr. Patel) and against plaintiffs after Dr. Patel successfully moved for summary judgment on the ground the lawsuit against him was barred by the one-year statute of limitations for medical malpractice claims.

The appeal centers around plaintiffs' attempt to substitute Dr. Patel as a named defendant in the lawsuit in place of a Doe defendant after the one-year limitations period expired. The trial court concluded, in essence, that plaintiffs could not use the Doe substitution procedure to add Dr. Patel in as a named defendant because Dr. Patel's name and identity were sufficiently known to plaintiffs at the time they filed the complaint, and the Doe substitution procedure is not available to a plaintiff if the would-be defendant's name "is known or could very easily be known by them." The court also rejected plaintiffs' contention that Dr. Patel was already adequately named as a defendant in the complaint. The court granted Dr. Patel's motion for summary judgment.

We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2023, plaintiffs filed a complaint in Stanislaus Superior Court (complaint) alleging the defendants named in their lawsuit were negligent and committed malpractice in rendering healthcare services to Leonetti. Plaintiffs alleged that, as a result, they suffered wage loss, hospital and medical expenses, general damage, loss of earning capacity, emotional distress, and loss of consortium.

Plaintiffs used a Judicial Council form[1] to draft their complaint. The caption on the first page of the complaint reads:

"PLAINTIFF: MARK LEONETTI and PIRET LEONETTI [¶]

---

[1]     Judicial Council form PLD-PI-001, COMPLAINT—Personal Injury, Property Damage, Wrongful Death.

2.

"DEFENDANT: GENESIS CARE USA OF CALIFORNIA;
(See Attachment 1)"

The complaint continued as follows: "Plaintiff *(name or names)*: Mark Leonetti and Piret Leonetti allege[] causes of action against defendant (*name or names*): Genesis Care USA of California; (See Attachment 1)."

Attachment 1 of the complaint identified the following additional defendants: "KAISER FOUNDATION HOSPITALS, a non-profit corporation; KAISER FOUNDATION HEALTHPLAN, INC.; and THE PERMANENTE MEDICAL GROUP, INC." Plaintiffs also sued fictitiously named defendants Does 1 to 25.

No other persons or entities were expressly identified as named defendants in the complaint.

Under the heading "*description of reasons for liability*," plaintiffs alleged the following:

> "In October, 2022 and thereafter, defendants provided medical care related to the treatment of [Leonetti] for nasal cancer. Plaintiff, [Leonetti] and his family, were assured that the treatment, which included radiation treatment, would not include his throat area. Contrary to his informed consent, and below the requisite standard of care, [Leonetti's] throat was irradiated, causing significant damages and injuries to him and his wife. [Leonetti] discovered this treatment that was contrary to his wishes and below the standard of care on or about October 6, 2022. [Leonetti] had been referred to Dr. Patel, at Genesis Care [USA of California], for oncological radiation treatment by his treating healthcare providers at Kaiser. Kaiser was negligent in their referral and their failure to ensure both the quality of care that was required by the standard of care and the appropriateness of that care to [Leonetti]. This care and treatment provided to [Leonetti] was not indicated and not consented to."

Despite mentioning "Dr. Patel" in the body of their complaint, plaintiffs did not include Dr. Patel among the expressly named defendants identified in their complaint. However, on January 19, 2024, plaintiffs filed an amendment to their complaint to substitute "Vatsal B. Patel, M.D." (i.e., Dr. Patel) in as a named defendant in place of Doe 1, alleging that plaintiffs were previously ignorant of his true name (the Doe

3.

amendment). Based on the allegations of the complaint, the Doe amendment was filed one year and three-and-a-half months after the date plaintiffs discovered the alleged negligence and medical malpractice.

On February 22, 2024, Dr. Patel filed his answer to plaintiffs' complaint. Dr. Patel generally denied the allegations of the complaint and alleged 18 affirmative defenses. Among those affirmative defenses, Dr. Patel alleged "the action is barred by the appropriate statute of limitations as set forth in Code of Civil Procedure sections 335.1 and 340.5, and [Dr. Patel] requests a separate trial in regard to this defense pursuant to Code of Civil Procedure section 597.5."

On October 16, 2024, Dr. Patel filed a motion for summary judgment or, in the alternative, summary adjudication. The motion for summary judgment was premised on Dr. Patel's contention that plaintiffs' claims are time-barred under Code of Civil Procedure section 340.5,[2] which provides a one-year statute of limitations for personal injury claims due to professional negligence.

On January 10, 2025, the trial court granted Dr. Patel's request for summary judgment and entered judgment in his favor.

On February 13, 2025, Dr. Patel served plaintiffs with notice of entry of judgment.

On February 20, 2025, plaintiffs timely filed a notice of appeal.

## DISCUSSION

### I.      Standard of Review

"Appellate courts determine de novo whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. [Citation.] Upon review, the appellate court applies the same three-step analysis as the trial court. [Citation.] This requires the court to (1) identify the issues framed by the

---

[2]      All further statutory references are to the Code of Civil Procedure unless otherwise stated.

4.

pleadings, (2) determine whether the moving party has established facts justifying judgment in its favor, and (3) determine whether the nonmoving party has demonstrated a triable issue of material fact. [Citation.] In conducting its review, the appellate court must, 'view the evidence in a light favorable to plaintiff as the losing party.' [Citation.] Under the three-step analysis, the moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. [Citation.] Typically, to meet this burden, a defendant moving for summary judgment can either negate an element of the cause of action or demonstrate a complete defense to plaintiff's claim. [Citation.] Only if the defendant meets its initial burden does the burden shift to the plaintiff to show a triable issue exists." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206–1207.)

## II. Analysis

### A. *The Statute of Limitations and the Doe Amendment*

The parties do not dispute that the one-year limitation period contained in section 340.5 applies to plaintiffs' claims. Section 340.5 provides, in relevant part:

> "In an action for injury … against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first….[3] [¶] … [¶]
>
> " 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury .…" (§ 340.5; *id*., at subd. (2).)

As mentioned, plaintiffs filed their Doe amendment to substitute Dr. Patel in for fictitiously named defendant Doe 1 pursuant to section 474. Section 474 provides, in

---

**3** Section 340.5 allows for tolling of the limitations period under specified circumstances. However, those circumstances are not presented in the case at bar.

relevant part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint … and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly …."

"Section 474 allows a plaintiff who is ignorant of a defendant's identity to commence suit—before the statute of limitations runs—by using a fictitious name for that defendant and then amending her complaint when the defendant's true name is discovered. [Citations.] If the statute's requirements are satisfied, the amendment relates back and the substituted defendant is considered to have been a party from the action's start." (*Hahn v. New York Air Brake LLC* (2022) 77 Cal.App.5th 895, 897–898; *Wallis v. Southern Pac. Transportation Co.* (1976) 61 Cal.App.3d 782, 786.) "Even under the most liberal construction of section 474, it is established that the plaintiff's ignorance, whether of the defendant's true identity or of the facts giving rise to a cause of action, must be real and not feigned." (*Wallis*, at p. 786.)

### B.     Plaintiffs Have Abandoned Their Argument That Dr. Patel Was Properly Substituted in for Doe 1 Pursuant to Section 474

In moving for summary judgment on the ground that plaintiffs' complaint is time barred, Dr. Patel challenged plaintiffs' use of section 474 arguing that plaintiffs were not ignorant of Dr. Patel's identity when they filed the complaint and that Dr. Patel, Leonetti's radiation oncologist, was involved in Leonetti's radiation treatment.

In opposing the motion, plaintiffs defended the use of section 474 by arguing, in essence, that they did not know Dr. Patel's full name. But, in doing so, plaintiffs admitted that Leonetti "suspected that his treating radiation oncologist was involved in potentially treating his neck, contrary to his wishes" and "knew that his radiation oncologist was 'Dr. Patel.' " Plaintiffs argued that it was not until they ordered Leonetti's medical records in mid-November 2023, that they determined "radiation was ordered for and administered to [Leonetti's] neck" and that " 'Vatsal B. Patel, MD' was

6.

the physician, 'Dr. Patel,' who ordered and caused [Leonetti] to be treated with radiation treatment in his neck area."

On appeal, however, plaintiffs no longer contend that they were "ignorant" of Dr. Patel's identity within the meaning of section 474, and there is no discussion of section 474 or the Doe amendment process in their brief on appeal. Consequently, they have abandoned this argument.[4] (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned." ' "]; see *Hopkins v. Woodward* (1932) 216 Cal. 619, 621 [argument raised at the trial court level is abandoned if the argument is not also raised on appeal].)

Plaintiffs' sole argument on appeal is that they sufficiently identified Dr. Patel as a defendant in their complaint. The issue was raised at the trial court level by plaintiffs in their opposition to Dr. Patel's summary judgment motion and, as a result, was preserved for appeal.

### C.    *Dr. Patel's Showing on Summary Judgment*

In his separate statement of undisputed material facts, Dr. Patel proffered the following material facts in support of his claim that plaintiffs' complaint is time-barred: (1) "On October 3, 2023, [p]laintiffs filed their Complaint … against Genesis Care USA of California–Modesto and Kaiser Modesto"; (2) "On January 19, 2024, [p]laintiffs filed an Amendment to their Complaint, naming Dr. Patel in place of 'Doe 1' "; (3) " On

---

[4]    In their opening brief on appeal, plaintiffs state that they "filed a DOE Amendment to the Complaint with the complete name of [Dr. Patel], namely 'Vatsal B. Patel, MD.' [Citation.] The amendment attempted by plaintiffs to cure this 'misnomer' was a DOE amendment, was intended to add [Dr. Patel's] full name and should arguably have been a Motion to Amend the Complaint *to correct that specific information for a party who was previously identified*." (Italics added.)

February 22, 2024, Dr. Patel filed an Answer to [p]laintiffs' Complaint denying each allegation and asserting … an affirmative defense that this action is barred by the statute of limitations"; (4) "Plaintiffs allege that defendants were negligent in providing care and treatment to [Leonetti] in October of 2022"; (5) "Dr. Patel is identified, by name, in [p]laintiffs' Complaint"; (6) Dr. Patel's name appeared as [Leonetti's] treating physician throughout his medical records from Genesis Care [USA of California]"; (7) "The medical records divulge that Dr. Patel examined [Leonetti] and authored the treatment plan and status updates"; and (8) "Plaintiffs knew, when filing their Complaint, both the identity and the basic facts constituting the claims against Dr. Patel."

Proffered facts Nos. 1 through 7 above were largely undisputed. To the extent a dispute was stated, we consider those disputes to be nonmaterial.[5]

Proffered fact No. 8 was only material in overcoming plaintiffs' reliance on their Doe amendment and section 474, which allows a party a means of timely filing a complaint in situations where a defendant's identity is unknown. As mentioned, plaintiffs have abandoned their argument that the Doe amendment was a proper use of the Doe amendment procedure in section 474.

Dr. Patel's showing was sufficient to meet his burden on summary judgment and demonstrated that the addition of Dr. Patel as a defendant was after the one-year statute of limitations had already expired and that plaintiffs could not rely on the Doe

---

[5]     Plaintiffs stated nonmaterial disputes to proffered facts Nos. 1, 2, and 4, as follows: As to proffered fact No. 1, plaintiffs stated, "**Disputed**: additional named defendants also include Doe defendants 1–25, and 'Dr. Patel' is named in the body of the complaint." As to proffered fact No. 2, plaintiffs stated, "**Disputed** only as to the [p]laintiffs' Amendment to Complaint named 'Vatsal B. Patel, MD' as DOE 1." Finally, as to proffered fact No. 4, plaintiffs stated, "**Disputed**. Plaintiff[s] allege[] that defendants were negligent in 'October 2022 and thereafter…' " (ellipses in original). None of these stated disputes are material in our view since they do not challenge the substance of the proffered facts.

amendment procedure to meet the limitation period. Consequently, the burden shifted to plaintiffs to demonstrate a triable issue of material fact.

### D. Plaintiffs Did Not Sufficiently Identify Dr. Patel as a Defendant

Plaintiffs rely largely on two cases to support their argument on appeal that they sufficiently identified Dr. Patel as a defendant in this matter: *Plumlee v. Poag* (1984) 150 Cal.App.3d 541 (*Plumlee*) and *Bell v. Tri-City Hospital Dist.* (1987) 196 Cal.App.3d 438 (*Bell*), disapproved on other grounds in *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1244. The trial court, in sustaining Dr. Patel's demurrer, addressed those cases but found the reasoning in *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483 (*Ingram*) to be more applicable to the case at bar. We examine those cases, and other relevant cases below.

#### Plumlee

In *Plumlee*, the plaintiff timely filed a creditor's claim against a decedent's estate but the claim was rejected. (*Plumlee*, *supra*, 150 Cal.App.3d at p. 544.) The plaintiff then filed a complaint for breach of contract and named as defendants three individuals who were alleged in the body of the complaint to be the two appointed executors and the appointed administrator-with-will-annexed of the decedent's estate. (*Ibid*.) The complaint alleged the decedent breached a contract to provide the plaintiff with continued employment for an additional 10 years following the decedent's death. (*Ibid*.)

The *Plumlee* defendants demurred to the first amended complaint and second amended complaint on two grounds, only one of which is relevant to the case at bar, namely: "That by naming [the defendants] as defendants *individually* [in the caption], [the plaintiff] failed to bring suit '*against the executor or administrator*' within three months after service of the notice of rejection of claim, as required by [statute]." (*Plumlee*, *supra*, 150 Cal.App.3d at pp. 545, 546, italics added.) The court sustained the two demurrers on this ground—the first time with leave to amend, and the second time without leave to amend. (*Id*. at p. 545.)

9.

The *Plumlee* court reversed the judgment. (*Plumlee*, *supra*, 150 Cal.App.3d at p. 547.) The court concluded the defendant's argument on demurrer "unduly place[d] form over substance" and explained, "[a]lthough the caption names respondents as individuals, the body of the original complaint clearly indicated that appellant's intention was to commence an action for the purpose of obtaining a judgment which could be satisfied from assets belonging to the decedent at the time of his death." (*Id*. at p. 546.) The allegation the court relied on read as follows:

> " '[Decedent] died on December 22, 1980. Thereafter [the two defendants] were appointed executors and [the third defendant] was appointed Administrator-With-Will-Annexed of his estate. [The] Plaintiff presented his creditor's claim … within the time and in the manner prescribed by law. On November 6, 1981, [the] plaintiff received Notice of Rejection of Claim.' " (Plumlee, supra, 150 Cal.App.3d at pp. 546–547.)

The *Plumlee* court wrote, "It has been uniformly held in our state that in order to determine the identity of a party courts are entitled to take into consideration the allegations of the complaint as well as the title. [Citations.] … '[I]t should require no argument to sustain the view that in determining who the parties to an action are the whole body of the complaint is to be taken into account, and not the caption merely.…' '[T]he body of the complaint … may and should be examined for the purpose of determining whether the action involves a party individually, or in a representative capacity.' " (*Plumlee*, *supra*, 150 Cal.App.3d at p. 547.)

The *Plumlee* court decided the "complaint was one against [the defendants] in their representative capacities. 'Where full notice is given and a reasonably prudent person would realize that he is the party intended to be named as the defendant, the court should treat the mistake as harmless misnomer in order to promote substantive rights.' [Citation.] In the case at bench[,] no one was deceived." (*Plumlee*, *supra*, 150 Cal.App.3d at p. 547.)

10.

*Plumlee* is not on all fours with the present case. In *Plumlee*, it was clear to all parties (and to the court) that the defendants were actually named as defendants. It was only the capacities in which they were sued that was omitted from the caption of the complaint. To resolve that question, the court looked to the allegations of the complaint and determined the allegations clearly indicated the purpose of the complaint was to charge the assets of the estate, and thus, the defendants could only be named in a capacity that would allow them to answer the claim (i.e., as executors and as administrator), which was alleged in the body of the complaint.

Unlike the circumstances in *Plumlee*, in the instant case Dr. Patel was not named as a defendant *in any capacity*. Unlike the *Plumlee* defendants, a reasonably prudent person in Dr. Patel's position would not be able to discern from the allegations of the complaint that plaintiffs sought to hold *him* liable for their claims. Dr. Patel was not personally alleged to have been negligent or to have committed medical malpractice. The following comment by the trial court in this matter is fitting: "Plaintiffs urge this Court to give a generous reading to the pleading to implicate Dr. Patel as on notice of his alleged negligence. But under these circumstances, there needs to be some direct allegation that Dr. Patel breached the medical standard of care. Based on the allegations, [Leonetti] was referred to Dr. Patel, but the allegations simply do not constitute a direct allegation that … Dr. Patel committed a tort (or, arguably, even treated [Leonetti].) Errors could have been made by Genesis [Care USA of California], by an employee of Genesis [Care USA of California], or by a doctor replacing Dr. Patel."

*Cases cited in Plumlee and by plaintiffs*

Plaintiffs also string cite to two cases relied on by the *Plumlee* court: *Lindsey v. Superior Court* (1929) 100 Cal.App. 37 (*Lindsey*) and *Lazar v. Estate of Lazar* (1962) 208 Cal.App.2d 554. Neither case aids plaintiffs' argument.

In *Lindsey*, the plaintiff filed suit for rescission of a contract. (*Lindsey*, *supra*, 100 Cal.App. at p. 39.) Subsequently, "the plaintiff was adjudged to be an incompetent

11.

person." (*Ibid.*) A guardian was appointed and the guardian applied to the court for, and received, "an order for his substitution as plaintiff in the action." (*Ibid.*) The amended complaint and a second amended complaint were filed, both of which named the plaintiff, as follows: " 'P.G. Sanborn, guardian, on behalf of Katherine Horton, an incompetent person, plaintiff.' " (*Ibid.*) During trial, the defendant moved for nonsuit on grounds the guardian was named as the plaintiff—not the incompetent person—and no cause of action in the guardian was shown. (*Id.* at p. 40.) The guardian then moved for leave to amend to correct the caption and to place the name of the ward (i.e., Katherine Horton) as plaintiff. (*Ibid.*) The trial court granted leave to amend, and the defendants sought a writ of prohibition directing said court to desist and refrain from further proceedings, arguing that the amended complaints constituted a "new action," that the guardian had not served them with a summons within three years on the new action, and that the court was without jurisdiction to do anything other than dismiss the complaint. (*Id.* at pp. 38–39, 40.)

In denying the petition for writ of prohibition, the *Lindsey* court concluded that the ward (i.e., Katherine Horton) should have been named as plaintiff rather than the guardian. (*Lindsey*, *supra*, 100 Cal.App. at p. 40.) Acknowledging the trial court's error in granting the guardian's application to be substituted in as plaintiff, the *Lindsey* court stated the order "was manifestly not intended as a dismissal of the action as to the incompetent plaintiff and should not be given that effect." (*Ibid.*) Moreover, the court observed that "the pleadings throughout show a cause of action in the original plaintiff," that the defendants had voluntarily appeared and defended the claims over the past three years, and that the court had retained jurisdiction over the parties. (*Id.* at pp. 40–41.) The *Lindsey* court held that the trial court had discretion to correct a mistake in the name of a party under section 473. (*Id.* at p. 41.)

*Lindsey* is distinguishable from the case at bar. In *Lindsey*, there was no question that the claims belonged to the ward and that the guardian was seeking to prosecute the

action for the benefit of the ward.  Here, unlike *Lindsey*, there was no indication that plaintiffs intended to hold Dr. Patel personally responsible for their claims.

In *Lazar*, the plaintiff filed a creditor's claim against the estate of a decedent. (*Lazar v. Estate of Lazar*, *supra*, 208 Cal.App.2d at p. 556.)  When the claim was rejected, the plaintiff sued and incorrectly named the estate as the defendant instead of the executors of the decedent's will.  (*Id*. at p. 557.)  The trial court, concluding the estate was not an entity capable of being sued, sustained a demurrer without leave to amend and entered judgment against the plaintiff.  (*Id*. at p. 555.)  The *Lazar* court reversed the judgment and concluded the plaintiff should have been allowed the opportunity to amend the complaint to name the executors of the decedent's will.  (*Id*. at p. 561.)  In doing so, the *Lazar* court noted, among other things, that it was clear that the plaintiff intended to seek and obtain a judgment that could be satisfied from the decedent's estate, and that the proper defendants were the executors.  (*Ibid*.)  Moreover, because the executor's attorney filed the demurrer on behalf of the "estate," the *Lazar* court concluded it was reasonable to assume the executors knew that naming the estate as a defendant "was an erroneous designation" and that "the executors would not be taken by surprise if the complaint were amended to name the executors as the defendants."  (*Ibid*.)

*Lazar* is distinguishable from the case at bar.  Here, as mentioned, there was no indication that plaintiffs were suing Dr. Patel, no allegation that Dr. Patel had been negligent in providing care to Leonetti, and no indication plaintiffs intended to hold Dr. Patel personally responsible for their claims.  The body of the complaint does not appear to state any cause of action against Dr. Patel personally.  Moreover, unlike *Lazar*, there is no argument presented by plaintiffs to demonstrate that their claims, if successful, cannot be satisfied by a judgment rendered against the entities expressly named as defendants.

13.

*Bell*

Plaintiffs also rely heavily on *Bell*, in which the plaintiffs, husband and wife, alleged defendant hospital was negligent and used a defectively designed and manufactured product in a series of unsuccessful surgeries on the husband. (*Bell*, *supra*, 196 Cal.App.3d at p. 441.) The *Bell* plaintiffs' initial complaint was filed against fictitiously named defendants only. (*Ibid*.) After filing the complaint, the *Bell* plaintiffs served the hospital with an untimely Government Claims Act claim (Gov. Code, § 810 et seq.). (*Bell*, at p. 441.) The hospital denied the claim and also denied the plaintiffs' application for leave to file a late claim pursuant to Government Code section 911.4. (*Bell*, at p. 441.)

The *Bell* plaintiffs then amended their complaint to name certain physicians and the manufacturer of the allegedly defective product as defendants in addition to 600 fictitiously named defendants. (*Bell*, *supra*, 196 Cal.App.3d at p. 441.) They did not, however, name the defendant hospital in the caption of the amended complaint, or in the "preliminary allegations setting forth the identities and capacities of the various defendants" but did expressly name the hospital as a defendant in their eighth cause of action for negligently granting staff privileges to the defendant-physicians. (*Ibid*.) In the complaint's prayer for relief, the plaintiffs "requested that damages be awarded against 'defendants' without further specification." (*Id*. at pp. 441–442.)

"After filing their first amended complaint, the [*Bell* plaintiffs] successfully petitioned the [trial] court for relief from the written claim requirement." (*Bell*, *supra*, 196 Cal.App.3d at p. 442.) Two months after obtaining said relief, the *Bell* plaintiffs "filed an amendment to their first amended complaint substituting [the hospital] for Doe 402." (*Ibid*.) The hospital "then successfully demurred on the ground the [*Bell*

14.

plaintiffs'] suit on the claim … had not been filed within 30 days … as required by [Government Code] section 946.6[, subdivision ](f)."**6** (*Bell*, at p. 442.)

On appeal, the *Bell* court determined that the plaintiffs could not rely on the Doe amendment procedures in section 474 to meet the 30-day deadline of Government Code section 946.6, subdivision (f), because "counsel was not ignorant of a potential cause of action against [the hospital]." (*Bell*, *supra*, 196 Cal.App.3d at p. 445.) Instead, the *Bell* court wrote, "what we have is a complaint which states a cause of action against a named defendant but omits the name of that defendant from the caption of the complaint." (*Id*. at p. 443.)

The *Bell* court stated, "[t]he only question is whether that complaint's failure to identify [the hospital] in the caption renders it insufficient to constitute the 'suit on the cause of action to which the claim relates, …' within the meaning of [Government Code] section 946.6[, subdivision ](f)." (*Bell*, *supra*, 196 Cal.App.3d at p. 445.) In addressing the question, the court concluded it appropriate to consider the entire complaint, relying on principles discussed in *Plumlee* and cases cited therein. (*Bell*, at pp. 445–446.)

The *Bell* court noted, "a prominent set of California commentators synthesizing the cases in this area has reached the following conclusion: 'A failure of the caption of the complaint to designate the names of the parties to the action apparently constitutes only an amendable formal defect.' " (*Bell*, *supra*, 196 Cal.App.3d at p. 446.) The court acknowledged that a number of state and federal cases address this issue, and that "Wright and Miller's treatise on federal procedure states the general rule as follows: 'Although helpful to the court, the caption usually is not considered a part of the pleader's statement of claim or response and is not determinative as to the parties to the action or the court's jurisdiction…. If the body of the complaint correctly identifies the

---

**6**    Government Code section 946.6, subdivision (f) reads: "If the court makes an order relieving the petitioner from Section 945.4, suit on the cause of action to which the claim relates shall be filed with the court within 30 days thereafter."

15.

party or if the proper person actually has been served with process, courts generally will allow an amendment … to correct technical defects in the caption.' " (*Bell*, at p. 446, citing 5 Wright & Miller, Federal Practice and Procedure (1969) § 1321, pp. 458–461.)

The *Bell* court reversed the judgment. (*Bell*, *supra*, 196 Cal.App.3d at p. 450.) In doing so, the court distinguished the facts of the case before it from those at issue in *Ingram*, discussed *post*, observing that *Ingram* "does not address the situation where, as here, the allegations of the complaint specifically and repeatedly refer to someone as a defendant. [Citation.] The test is an objective one: would a reasonable defendant have understood the complaint to allege that it was in some way responsible for plaintiff's injury? There can be no question here that the answer must be in the affirmative." (*Bell*, at pp. 448–449.)

Here, the situation is different from that in *Bell*. In *Bell*, the plaintiffs expressly referred to the hospital as a defendant and alleged its negligent conduct in the allegations of the plaintiffs' eighth cause of action. Here, Dr. Patel was not expressly identified as a defendant in plaintiffs' complaint and there are no allegations in the complaint that Dr. Patel was negligent or had committed medical malpractice. Again, as the trial court commented, "the allegations [of the complaint] simply do not constitute a direct allegation that … Dr. Patel committed a tort (or, arguably, even treated [Leonetti].) Errors could have been made by Genesis [Care USA of California], by an employee of Genesis [Care USA of California], or by a doctor replacing Dr. Patel." Under the facts of this case, it is not objectively reasonable that Dr. Patel would "have understood the complaint to allege that [he] was in some way responsible for [Leonetti's] injury." (See *Bell*, *supra*, 196 Cal.App.3d at p. 449.)

### *Ingram*

In *Ingram*, the plaintiff was an automobile passenger who was injured when the vehicle he was traveling in collided with another vehicle. (*Ingram*, *supra*, 98 Cal.App.3d at p. 486.) The driver of the vehicle in which the plaintiff was a passenger (plaintiff's

16.

driver) died as a result of the accident. (*Ibid*.) The plaintiff filed a complaint against two named individuals—the driver of the other vehicle (defendant driver) and the owner of the vehicle driven by plaintiff's driver (defendant owner) (collectively, the named defendants)—and Does I through X. (*Ibid*.) However, the plaintiff did not name plaintiff's driver as a defendant. (*Ibid*.) The plaintiff alleged that the drivers of both vehicles "operated [their] respective vehicles so negligently that they collided." (*Ibid*.)

Counsel for the plaintiff filed an at-issue memorandum stating, "all essential parties had been served" and "no other party would be served with process." (*Ingram*, *supra*, 98 Cal.App.3d at p. 487.) In a pre-trial statement, he "described the proceedings as an action for personal injury by [the plaintiff] against '[the named defendants]' " and "asserted the issues to be the negligence of [defendant driver], the negligence of [plaintiff's driver], [defendant owner's] liability, the injury suffered, and contributory negligence." (*Ibid*.) At the pre-trial conference, "[t]he parties agreed that all necessary parties were before the court, the issues were joined, and no amendments to the pleadings were required." (*Ibid*.) Subsequently, the plaintiff sought "permission to amend his complaint to set forth in the title as a named defendant (not as a substitute for a fictitious defendant) 'The Estate of [plaintiff's driver].' " (*Id*. at p. 488.) The plaintiff argued, similar to plaintiffs in the case at bar, "that in the body of the complaint, although not in the caption, [plaintiff's driver] was described [as] a defendant." (*Ibid*.) The court granted leave to amend and subsequently allowed the appointed administratrix of the estate to be substituted in for plaintiff's driver. (*Ibid*.)

Defendant owner moved to strike the amendment and order of substitution on several grounds, including that both were time-barred by the statute of limitations. (*Ingram*, *supra*, 98 Cal.App.3d at p. 488.) In opposing the motion, the plaintiff argued "he intended that [plaintiff's driver] be a defendant and believed [plaintiff's driver] was a defendant at the time of the pre-trial and settlement conference" (*id*. at pp. 488–489) and submitted a declaration to the same effect, adding "all actions taken [after the complaint

17.

was filed] were done with the belief that [plaintiff's driver] was a Defendant" (*id*. at p. 489). The trial court granted the defendant's motion to strike the amendment and order of substitution. (*Ibid*.) The plaintiff then filed a petition for a writ of mandate to vacate the order to strike. (*Ibid*.)

The *Ingram* court denied the writ petition and stated, "in distinguishing form from substance we must look at what the complaint says, not what counsel subjectively believes." (*Ingram*, *supra*, 98 Cal.App.3d at pp. 490, 493.) The court observed that the complaint alleged plaintiff's driver's negligence caused his injuries but it did not designate plaintiff's driver or his estate as a defendant, and "entirely omitt[ed] them from the caption where defendants are listed." (*Id*. at p. 490.) The court found those omissions "particularly relevant when viewed with counsel's later actions"—i.e., making "no attempt to open an estate or secure service upon" the plaintiff's driver's representative; stating in his at-issue memorandum that no other party had been, or needed to be, served; and identifying only the named defendants as defendants even though identifying plaintiff's driver's negligence as an issue in the case. (*Ibid*.)

The court acknowledged that the limitations period had expired by the time the amendment was proffered, and observed that the plaintiff did not attempt to, and was not likely entitled to, substitute plaintiff's driver or his estate for a Doe defendant.[7] (*Ingram*, *supra*, 98 Cal.App.3d at pp. 490–491.)

The *Ingram* court wrote, "we refuse to conclude as alleged by [the plaintiff] that he had at all times intended [plaintiff's driver] and his estate to be a defendant charged

---

[7] With regard to the plaintiff's inability to rely on the Doe amendment procedure, the *Ingram* court stated, "a party may only avail himself of the use of naming Doe defendants as parties when the true facts and identities are genuinely unknown to the plaintiff. (*Ingram*, *supra*, 98 Cal.App.3d at p. 492.) "The straightforward rule is that amendment after the statute of limitations has run will not be permitted when the result is the addition of a party who, up to the time of the proposed amendment, was neither a named nor a fictitiously designated party to the proceeding." (*Ibid*.)

with liability for the injuries.  Rather, it unequivocally appears that for whatever reason, [the plaintiff] did not intend to direct the action against [plaintiff's driver] or his estate." (*Ingram*, *supra*, 98 Cal.App.3d at p. 492.)

Plaintiffs did not address *Ingram* in their opening brief on appeal but in their reply brief they argue "[u]nlike *Ingram*, Dr. Patel was identified as being liable for plaintiffs' injuries"—an argument we have already rejected *ante*.  Plaintiffs also argue, "[t]he factual allegations of the complaint also confirm that [plaintiffs] clearly 'intend[ed] to direct the action against' Dr. Patel."  But, as the *Ingram* court stated, "in distinguishing form from substance we must look at what the complaint says, not what counsel subjectively believes."  (*Ingram*, *supra*, 98 Cal.App.3d at pp. 490, 492.)

Plaintiffs further argue on reply that, "unlike *Ingram*, [Dr. Patel's] actions clearly confirm that [Dr. Patel] has never been confused about the allegations of the initial complaint against Dr. Patel, his involvement in [Leonetti's] medical management, or Dr. Patel's role in this lawsuit."  From this, it is apparent that plaintiffs want us to draw the conclusion that Dr. Patel always knew he was a named defendant.  However, as previously stated, we have concluded that a reasonable person in Dr. Patel's situation would not have assumed or presumed from the allegations of the complaint that he was being sued.

There are other similarities and differences between the *Ingram* case and the case at bar.  In *Ingram*, the plaintiff directly alleged the negligence of plaintiff's driver in the body of his complaint—a fact that might have weighed in favor of allowing an amendment to name plaintiff's driver as a defendant but for the fact that the plaintiff's counsel made various representations to the trial court that all defendants had been served and that no additional defendants would be served.  Here, plaintiffs did not allege any negligence or medical malpractice on the part of Dr. Patel.

19.

### III. Summary

In summation, and relying on the principles articulated in *Bell*, *Plumlee*, *Ingram* and other cases cited herein, we affirm the judgment. Dr. Patel was not named as a defendant in the complaint's caption; he was not identified as a defendant in the body of the complaint; he was not alleged to have engaged in any negligent conduct or other conduct for which liability might be imposed; he was not the only individual or entity against whom the allegations might have been directed; plaintiffs have not presented any argument to demonstrate that their claims, if successful, cannot be satisfied by a judgment rendered against those defendants who are expressly named as defendants; and a reasonable person in Dr. Patel's situation would not have known based on the allegations of the complaint that plaintiffs intended to hold him liable for their claims.

### DISPOSITION

We affirm the judgment. Vatsal Patel, M.D., is entitled to his costs on appeal.


HARRELL, J.

WE CONCUR:


DETJEN, Acting P. J.


FRANSON, J.

20.